## AMES v. QUIMBY.

1. A rule of court in Michigan provides, that where a defendant pleads matter of set-off, founded on a written instrument, he cannot "be put to the proof of the execution of the instrument or the handwriting" of the opposite party, unless an affidavit is filed "denying the same." *Held*, that the want of such affidavit does not preclude the plaintiff from showing that such an instrument, dated January 2, was executed on Sunday, January 1, or that his duplicate of an instrument executed in duplicate by him and the defendant differs in its contents from the one retained by the defendant.

2. The plaintiff, where the quality of goods which he furnished at a given time to the defendant is in question, may show the good quality of like articles furnished at the same time by him to another party, if he further shows that those he furnished to each party were of the same kind and quality.

3. Where the evidence is such that, as to a given matter, there is no question for the jury, a charge and a refusal to charge in regard to such matter are not a ground for reversing the judgment, because they work no injury to the party excepting.

4. The court charged the jury that while the plaintiff could not recover for any more goods than his bill of particulars set forth, he was not bound by a mistake in carrying out the rate or price, but could show what he was actually to have, it not appearing by the record what were the contents of the bill, but it appearing that the plaintiff claimed there was a mistake in it in that respect. *Held*, that the charge was not erroneous.

5. After a new trial has been had, pursuant to the mandate of this court, and a second judgment rendered, no errors other than those committed after the mandate was received below can be considered here.

ERROR to the Circuit Court of the United States for the Western District of Michigan.

The case is stated in the opinion of the court.

*Mr. Michael J. Smiley* for the plaintiffs in error.

*Mr. Lyman D. Norris* for the defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

The defendant in error brought this suit against the plaintiffs in error in July, 1872, in a court of the State of Michigan. It was removed into the Circuit Court for the Western District of Michigan in August, 1872, before the declaration was filed. The action is assumpsit. The declaration claims $25,000 for goods sold and delivered, and a like amount for money had and received, and $15,000 for interest. The plea was non-assumpsit with a notice of set-off to the amount of $25,000, and a notice that the goods alleged to have been furnished by the plaintiff were furnished under a special contract that they were to be of first-class quality, and that they were not. A further notice under the plea alleged that the goods furnished were furnished under three several contracts, made Jan. 2, 1865, Jan. 27, 1866, and Dec. 25, 1866, for the furnishing by the plaintiff to the defendants of shovel-handles, and that the plaintiff did not fulfil the contracts as to the quality of the handles. In April, 1875, the suit was tried by the court without a jury. On the findings of the court a judgment was rendered for the plaintiff for $7,825.62. The defendants brought the case to this court by a writ of error, and the judgment was reversed, and the cause was remanded to the Circuit Court with directions to award a new trial. The decision of this court is reported in 96 U. S. 324. The only question there presented and determined was as to the proper construction of a written contract made between the parties, Jan. 2, 1865, in a particular not now important. The construction put by the court below upon that contract was held to have been erroneous. The case was tried a second time before a jury in April, 1879. The jury found a verdict for the plaintiff for $12,816.53, and a judgment thereon was rendered against the defendants. To review and reverse this judgment the present writ of error has been brought.

The plaintiff, to maintain the issues on his part, read in evidence a stipulation signed by the respective attorneys, whereby the defendants admitted the sale and delivery of shovel-handles shipped to the defendants' firm and received by it at North Easton, Massachusetts, at the dates and in the

quantities therein set forth, being, in 1865, 15,607 dozen, in 6 items, in May and July; in 1866, 10,188 dozen, in 13 items, in June, July, August, and September, and 2,852 dozen, in 3 items, in November and December, up to the 20th; in 1867, 33,814 dozen, in 37 items, in every month but January, November, and December; and, in 1868, 11,113 dozen, in 11 items, in April, May, July, September, and October. The stipulation stated that the dates given were the dates of the shipment by rail from Michigan and Canada; that the dates of the receipt by the defendants at North Easton were fifteen days later than the several dates of shipment; and that the plaintiff admitted payments on account of said handles, at the dates and in the sums specified thereafter in the stipulation, the payments amounting to $83,153.48. The stipulation concluded with this clause: "The question of the quality of the handles delivered as aforesaid, and all other questions of fact not stipulated, are left open to the jury and for other and further evidence." The plaintiff was then examined as a witness on his own behalf. On his cross-examination he testified that there was a contract signed by the parties for 1865 for handles. The contract being shown to him, he "identified" it, as the bill of exceptions states, and it was read in evidence by the defendants. It bore the date of Jan. 2, 1865. The plaintiff rested his case, and the defendants introduced testimony and rested their defence. One of the defendants testified that he made the contract of 1865, and it was made in the evening, and he stated who were present. Then the plaintiff, being recalled, testified, without objection, that the contract dated Jan. 2, 1865, was not signed on that day — on the evening of that day. He was then asked, "When was that contract signed?" The defendants objected to the question on the ground that "it was irrelevant and immaterial, and there had been no previous denial by affidavit or otherwise of the execution of the contract, and it was incompetent." The plaintiff replied that the fact of the execution of the contract was not denied, "but he proposes to show the time of the execution of the contract was on Sunday, which avoids the contract." The court overruled the objection, and the defendants excepted. The witness then answered that the contract was

signed and delivered on Sunday, Jan. 1, 1865, stating the hour and the place, and giving particulars as to who were present and what was done. The defendants then gave testimony by three witnesses to contradict the plaintiff. The defendants now contend that the court erred in permitting the plaintiff to testify that the contract was executed on Sunday, in view of the then situation of the case and what had transpired on the trial; that he had given evidence as to its execution and allowed it to be put in evidence without suggesting any infirmity in it; and that the defendants would necessarily be surprised by such testimony. The defendants also claim that, under a rule of court governing the pleadings and practice in Michigan, where a defendant insists on a claim by way of set-off, founded on a written instrument, he cannot "be put to the proof of the execution of the instrument or the handwriting" of the opposite party, unless an affidavit is filed "denying the same;" that the failure of the plaintiff to file such affidavit was an admission of the execution of the instrument in manner and form as set up, and as being of the date of January 2; and that the testimony went to show that the contract set up was not executed.

The only ground alleged at the trial for the incompetency of the evidence was that the execution of the contract had not been denied by affidavit. Assuming that the rule of court referred to can be taken notice of by this court, it not being set forth in the record, and there being no statement in the record that the affidavit referred to was required by any rule of court, and assuming that it is to be inferred that there was not any such affidavit, it not being set forth in the bill of exceptions that there was not, we are of opinion that the rule cited refers only to proof of the genuineness of a seal or of handwriting, and does not refer to any matter which goes to show the invalidity otherwise of an instrument. Such a provision in a rule of court or in a statute is not uncommon, and, whenever it is expressed in language such as that now presented, it has never, that we are aware, received any other construction. In the case of *Pegg* v. *Bidleman*, 5 Mich. 26, Pegg and another were sued on a note signed "S. Pegg & Co." They appeared and pleaded the general issue, but did not deny on oath the

execution of the note. Judgment was given against them without proof that they " composed the firm of S. Pegg & Co. and executed the note." It was held that, as the defendants had appeared, and the declaration was against them as individuals and did not allege they were partners, the question was simply whether they executed the note by the name subscribed to it; and that they must be taken to have admitted that the note was executed by the parties declared against. The decision was that the admission covered the fact that the signature was that of the parties sued. If the parties be sued as partners, the admission that the signature is their signature as partners necessarily admits that they were partners. This was the principle applied in *Thomas* v. *Clark*, 2 McLean, 194, and *Pratt* v. *Willard*, 6 id. 27. In *Curran* v. *Rogers*, 35 Mich. 221, a written contract was signed in the name of a firm, the two partners in which were sued on the contract. The general issue was pleaded without any affidavit. One of the firm sought to prove that the other, who had signed the firm name, had no authority to do so. It was held that, as the declaration set out the contract *verbatim*, and alleged it to have been jointly executed, its execution was admitted as to both defendants. There is nothing in these decisions which goes to show that the plaintiff, notwithstanding anything in the language of the rule of court invoked, could not prove that the contract was in fact signed at a date different from that appearing on its face. The evidence did not go to show that it was not dated January 2 when it was signed, but went to show that, though dated January 2, it was signed on January 1. It admitted the execution of the contract, but tended to avoid it by proving a fact in regard to it which did not appear on its face, and which went to the merits. This was competent evidence, and was not irrelevant or immaterial. All questions as to surprise, or as to reopening the case, or as to the order of proof, were matters of discretion, not reviewable here.

Another written contract was shown to the plaintiff, and "identified by him," and put in evidence by the defendants, dated Dec. 25, 1866. It provided for advances by the defendants to the plaintiff, and for their acceptance of his drafts, and for his payment to them of " $2\frac{1}{2}$ per cent commission for accepting his

drafts." On the language of the contract so put in evidence a question was raised as to whether the commission was to be paid on all drafts accepted, or only on those which were in excess of shipments of handles. On his re-direct examination, when first called, the plaintiff stated, without objection, that he had had a duplicate of the contract which was destroyed by fire; that the copy so introduced was not an exact copy of the one he had, in its reference to the two and a half per cent commission; that the one he had was made by one of the defendants; that drafts for handles shipped he was to pay no commissions on; and that those for advances before shipments he was to pay commissions on. He was then asked, "What change was made in the duplicate which you had?" This question was objected to by the defendants on the ground that it was incompetent and irrelevant, "and, there having been no denial of the execution of this contract as pleaded and given notice of by the defendants, it is incompetent to vary it by parol." The objection was over-ruled, and the defendants excepted. The witness answered that the word "advanced" was inserted after the word "drafts," so as to read "$2\frac{1}{2}$ per cent commission for accepting his drafts advanced." The defendants contend that the evidence went to a denial of the execution of the contract, and was, therefore, incompetent under the rule of court before referred to. The remarks before made apply to this point also. The evidence went to show what the actual written contract between the parties was. It did not go to show that the defendants' copy was not actually signed by the parties. The one copy was as competent evidence of the real contract as the other was. What the plaintiff had testified to in regard to the contents of his original of the contract was admitted without objection and permitted to stand, and no motion was made to strike it out. The evidence sought by the question objected to only went to explain the previous evidence.

A question having arisen as to the quality of the handles furnished to the defendants by the plaintiff in 1867 and 1868, a witness for the plaintiff was asked as to the quality of the handles furnished by the plaintiff to the Old Colony Company in 1867 and 1868. The defendants objected to the question on the ground that it was irrelevant and incompetent, and not

admissible to show the quality of the handles furnished to the defendants. The plaintiff's counsel then stated that he proposed to show, in connection with the offered testimony, that the handles were of the same general quality as those furnished to the defendants. Thereupon the objection was overruled and the defendants excepted, and the witness answered that the quality of the handles sent to the Old Colony Company in 1867 and 1868 was good. Evidence had been given for the defendants that the quality of the handles furnished by the plaintiff to the defendants in 1867 and 1868 was inferior to the quality of those he had furnished in previous years. The plaintiff subsequently gave evidence tending to show that the handles furnished by him to the defendants in 1867 and 1868, and the handles furnished by him to the Old Colony Company in 1867 and 1868, were of the same kind and quality. After this evidence was given there was no motion to strike out the evidence so objected to, or to rule upon its admissibility. The evidence objected to was admissible.

Alleged errors in the charge to the jury, and in refusals to charge as requested, are urged by the defendants. As to the request to charge respecting the right of the defendants, under the contract of Jan. 27, 1866, to charge the plaintiff back with the full value of such handles as broke in the process of bending, it is sufficient to say that the record discloses that there was a settlement between the parties respecting the one hundred and seventy-two dozen handles charged back in 1866 under that contract, and that there was really no question for the jury as to those handles. If the charge given, and the refusal to charge as requested, had the effect to withdraw from the jury the consideration of the one hundred and seventy-two dozen, it only effected the result required by the settlement, and worked no injury to the defendants.

In regard to the refusal to charge that the plaintiff could recover $1.37½ per dozen for only such handles delivered between Oct. 8, 1866, and April 20, 1867, as he had carried out at that price in his bill of particulars, and to the charge to the contrary, it is sufficient to say that the bill of particulars is not in the record, and there is no statement in the bill of exceptions as to its contents; and that when, in the course of the

evidence, the claim was made by the plaintiff for $1.37½ per dozen for the handles delivered between those dates, the defendants objected that there were three items in April, 1867, carried out in the bill of particulars at $1.25 per dozen, and the plaintiff then and there claimed that the bill of particulars contained a mistake in that respect. The charge of the court was, that while the plaintiff could not recover for any more handles than his bill of particulars set forth, he was not bound by a mistake in carrying out the rate or price, but could show what he was actually to have. We see no error in this, under the circumstances.

The request made to charge as to the operations of 1868 was granted, and the instruction given is not open to the objection that the price for 1868 was fixed by the court and was not left to the jury to determine.

Although this court reversed the first judgment, and remanded the cause for a new trial, and a new trial has been had, with a new judgment, the plaintiffs in error now urge, without having raised the point before, that this court, instead of having awarded a new trial, should have rendered a judgment for the defendants below on the findings made by the Circuit Court at the first trial, and that it should now do so. The question is not open for this court to review on this writ of error the judgment it rendered on the former writ of error. That judgment has been carried into effect, and the parties who procured it have enjoyed the benefit of it in the new trial they have had.

*Judgment affirmed.*