## BASS et al. v. TAYLOR et al.*

### No. 10980.

Court of Civil Appeals of Texas. Dallas.

April 23, 1932.

Rehearing Denied May 28, 1932.

L. J. Truett, of McKinney, for appellants.

John Doyle and A. M. Wolford, both of McKinney, for appellees.

JONES, C. J.

Appellees, S. G. Taylor, E. E. Betts, J. H. Renfro, T. D. Wood, Lee Gallahar, and Walter Rolf, residents of Collin county, instituted this suit, against appellants, Levi Bass and Jim Bass, residents of Collin county, to enjoin the construction of a dam on appellants' land to defend their land from the overflow waters of Wilson creek. On the filing of the suit, a temporary writ of injunction was granted, and this was made permanent on a trial of the cause on its merits. An appeal from the judgment was duly perfected, and the following is a sufficient statement of the facts:

Each of appellees' land is bounded on one side by Wilson creek. Taylor's land consists of 80.14 acres, Betts' land of 57.5 acres, Renfro's land of 34¼ acres, Wood's land of 86 acres, Gallahar's land of 73 acres, and Rolf's land of 34¼ acres. All of this land lies in what may be described as the Wilson Creek Valley and is subject to overflow from the waters of Wilson creek.

Appellants' land, consisting of approximately 250 acres, lies to the north of appellees' land, and is in the main located in what may be termed East Fork Valley. Wilson creek and East fork each run in a somewhat

southeasterly direction, gradually converging toward each other, and, about two miles southeasterly from appellants' land, Wilson creek flows into East fork. There is a comparatively narrow ridge between the lands located in Wilson Creek Valley and the lands located in East Fork Valley in the vicinity where the lands in question are located. This ridge is of sufficient height to confine the overflow waters of ordinary floods within the respective valleys of these water courses; however, there is a slough or natural depression through this ridge, between appellees' lands and the lands of appellants, which constitutes a natural drainage for overflow waters of Wilson creek into East fork. This slough or depression is a break in this dividing ridge and has a width of approximately 500 yards. The effect of this natural depression is that, in times of ordinary floods, a considerable portion of the overflow waters of Wilson creek is caused to flow through this depression into the East Fork Valley and finds outlet in the waters of East fork. This water from Wilson creek would overflow appellants' lands, and, to protect their lands from such overflow, appellants propose to construct a dam closing this gap in the ridge and thereby preventing any overflow water, in times of ordinary floods, from passing over their lands in the valley of East fork. The result of the construction of such a dam would be to throw the volume of water, which had theretofore found an outlet through this depression to East fork, over appellees' lands, to their material damage.

Some years previous to the attempt of appellants to construct the dam in question, some of the appellees had erected small levees on the north bank of Wilson creek, as a protection from overflow waters. These levees only increased the height of the land, on the bank of the stream on which they were located, some two or three feet at the highest places, and there were a number of breaks in such levees at the time this suit was tried. However, these levees increased to an appreciable extent the amount of water that passed through the depression and over appellants' land.

Appellants secured from the state reclamation engineer a permit for the building of the dam in question, and also submitted to, and had approved by, such engineer their plans for the dam. The pleadings of the parties raise all the issues herein discussed. The pleadings are necessarily voluminous, and it is not deemed necessary, for a consideration of the issues herein discussed, to make any extended statement of them. The case was tried to a jury, submitted on special issues, and the findings of the jury are made the basis of the judgment granting appellees a perpetual injunction, forbidding the construction of the dam. The special issues submitted to the jury and the verdict thereon are as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that, prior to the erection of any of the levees by plaintiffs part of the overflow water from Wilson Creek passed through natural depressions onto and over defendants' land into East Fork bottom or East Fork Creek? Answer 'yes' or 'no.' To which question the jury answered 'yes.'

"Special Issue No. 2: Do you find from a preponderance of the evidence that if the defendants construct their proposed levee at the place in question it will divert and cause a greater volume of overflow water from Wilson Creek to flow upon plaintiffs' lands or the lands of either of them than would naturally flow over the same if said proposed levee was not constructed? Answer 'yes' or 'no.' To which question the jury answered 'yes.'

"Special Issue No. 3: Do you find from the preponderance of the evidence that the plaintiffs, or some of them, have constructed upon their respective premises a levee which in flood times diverts overflow waters from Wilson Creek and causes the same to flow upon the defendants' land in greater volume than would flow upon said land if said levee or levees were not built? Answer 'yes' or 'no.' To which question the jury answered 'yes.'

"If you have answered special issue No. 2 'yes,' then you will answer special issue No. 4, otherwise you need not answer special issue No. 4.

"Special Issue No. 4: Do you find from the preponderance of the evidence that said increased volume of water, so diverted and caused to flow upon plaintiffs' land, or upon the land of either of them, would cause material damage to the land of either of said plaintiffs? Answer 'yes' or 'no.' To which question the jury answered 'yes.'

"In answering special issue No. 4 you will not allow or take into consideration damage to said land, if any, which would be caused by the overflow waters from Wilson Creek which would naturally flow over and upon plaintiffs' lands from the natural lay of the land unobstructed by plaintiffs' levees, if said levees or any of them do obstruct the natural flow of the overflow waters from Wilson Creek."

The answer to each special issue is sustained by evidence, and hence each is adopted as a finding of fact.

Appellants contend that the court erred in sustaining a special exception to the following portion of their answer, and also in sustaining objections to evidence tending to establish such facts: "These defendants further show to the court that it is the policy of

the laws of this State, as declared in the statutes, that the overflow lands of the State be reclaimed, to the end that the natural resources of the State may be conserved and developed, such work being under the general supervision of the State Reclamation Engineer; that in pursuance of such policy these defendants made application to the State Reclamation Engineer for permission to erect a levee that would close the gap in the said ridge that separates the valley of Wilson Creek from the valley of East Fork, and submitted plans therefor in order that the flood waters of Wilson Creek may be confined within the Wilson Creek valley and not be forced by the levees aforesaid through said gap into the East Fork valley; that said State Reclamation Engineer personally inspected the ground where it was proposed to construct such levee, and the conditions existing in said vicinity, and officially gave his approval to the construction of such levee and the plans submitted therefor; that thereupon these defendants began the construction of the proposed levee and prosecuted such construction until stopped by writ of injunction issued out of this court at the instance of plaintiff S. G. Taylor."

Appellants disclaimed any intention to establish a levee improvement district, authorized by the statutes of this state, but are seeking to construct only an improvement for their own benefit. Appellants also contend that the court erred in not permitting proof that the small levees theretofore constructed by appellees were constructed without permission from the state reclamation engineer. These levees were privately owned by the respective landowners who constructed them. Appellants further contend that the court erred in not permitting evidence as to the value of the proposed dam to them, if they were permitted to construct same; that the court erred in refusing to submit to the jury certain requested special issues; and that neither the findings of the jury nor the evidence in the case warranted the court in rendering judgment perpetually enjoining them from erecting the proposed levee. These contentions are each presented to the court by proper assignments of error and appropriate propositions of law. We believe the case can be more logically discussed without separate reference to each of these assignments.

■ It is true, as contended by appellants, that the policy of this state, as defined by our statutes, is to authorize and encourage the reclamation of overflow land, but this policy cannot be construed as going to the extent of taking or damaging the land of one citizen in order that another citizen may be benefited in the use of his land, except by payment of due compensation to the damaged owner. This is the fundamental law of this state, and cannot be circumvented by legislative enactment.

■ In order to carry out its policy for the reclamation of overflow land, the state, through legislative enactment, has authorized the creation of levee improvement districts, but, as an integral part of such enactment, it is provided that the owner of any land taken or damaged by such levee improvements must be duly compensated for the damages he has thereby suffered. This state, neither through legislative enactment, nor through decisions of its higher courts, has attempted to declare that, merely by securing permission from the state reclamation engineer for the erection of a private dam, one citizen may take or damage the property of another, without due compensation to the injured owner. The fundamental law of this state is a guaranty against such procedure, even though the benefits to the one, taking or damaging the land of another, may exceed in money value the damage suffered by the other. Texas Constitution, art. 1, § 17; Fort Worth Imp. Dist. v. City of Fort Worth, 106 Tex. 148, 158 S. W. 164, 48 L. R. A. (N. S.) 994; article 7981, R. C. S. 1925; Rutledge v. State, 117 Tex. 342, 292 S. W. 164, 7 S.W.(2d) 1071; Wilkerson v. Garrett et al. (Tex. Civ. App.) 229 S. W. 666; Jackson v. Knight (Tex. Civ. App.) 268 S. W. 773; article 7589a, Vernon's Ann. Civ. St.

■ The controlling issue of this appeal is: Shall appellants be permitted to dam up a natural drainage of the water from Wilson creek, in cases of ordinary overflows, and thereby cause the water that naturally flowed over their land to flow over and damage the land of appellees? The rule of law in this respect is stated by the author of the annotations to 16 A. L. R. 629 to be: "A riparian owner has no right to construct an embankment or barrier along the normal bank of the stream, to protect his land from the overflow thereof, when such embankment or barrier will cause the waters of the stream, in times of ordinary floods, to damage the lands of other riparian proprietors." This rule of law is supported by a long line of decisions, cited from other states, and the following from this state: Fort Worth Imp. Dist. v. City of Fort Worth, supra; Sullivan v. Dooley, 31 Tex. Civ. App. 589, 73 S. W. 82; Way v. Roddy (Tex. Civ. App.) 140 S. W. 1148; Jackson v. Knight, supra.

■ While the rule of law above announced is of almost universal recognition in this country, there may arise a condition, growing out of the previous action of a complaining riparian owner, which will modify its application. If such an owner theretofore had constructed a levee that diverts overflow water from its natural drainage over his land, and thereby caused such diverted water to flow on the land of the riparian owner, of whose act he is complaining, he thereby estopped himself from complaining of an obstruction that repels merely the amount of water that was diverted by the complainant's

act. In other words, if A builds a levee on his side of a stream, subject to overflow, to protect himself from such overflow, and in doing so causes more water to flow on B's land than otherwise would have done so, then B has the right to erect an artificial barrier sufficient to repel the water caused by A's obstruction to flow on B's land. So, in the instant case, when those appellees, who theretofore had erected small levees and thereby caused an increased amount of overflow water to pass over the land of appellants, appellants instantly had the right to construct a levee sufficient to repel the increase of water diverted to their land by appellees' levees. Appellants' rights in this respect end when they have defended themselves against the wrongful diversion of water by appellees.

■ Appellants are not permitted to go beyond such defensive right. Under the guise of self-protection, they cannot erect a levee which will not only turn back the overflow water on their land, caused by the small levees of appellees, but which will in addition divert overflow water largely in excess of what they may lawfully defend against. Under the findings of the jury, the effect of the proposed dam to be erected by appellants would greatly exceed their rights of protecting themselves against the said former acts of appellees. In proposing to erect such a levee, they render themselves subject to the injunctive powers of a court of equity. Wilhelm v. Burleyson, 106 N. C. 381, 11 S. E. 590; Mauvaisterre Drainage & Levee Dist. v. Wabash R. Co., 299 Ill. 299, 132 N. E. 559, 22 A. L. R. 944.

It follows that there was no error in sustaining the special exception of appellees and thereby striking out the paragraph from appellants' answer, above quoted, because same constituted no defense in this suit. It follows also that there was no error in excluding evidence, to the effect that appellants had secured a permit for the erection of the dam and had their plans for same approved by the state reclamation engineer, for such evidence was irrelevant and immaterial to any issues in this case.

■■ Appellants present the theory that the right of appellees to prevent injury to their land, by the construction of the dam, should be measured by the balancing of equities between the parties, and offered to prove that damage in a lesser amount would be sustained by appellees than would be sustained by appellants and adjoining landowners, similarly affected, if the construction of the dam should be prohibited. The rule for balancing of equities does not apply in the instant case, for appellees have the statutory right to have the overflow water of Wilson creek to pass through natural channels. Article 7589a, Vernon's Ann. Civ. St. Under the authorities above cited this right existed in appellees, independent of such statute. It follows that there was no error in the ruling of the court on the evidence sought to be elicited to establish the benefits that would come to appellees and to adjoining landowners by the construction of the proposed dam.

We have carefully examined appellants' assignments of error in reference to the refusal of the court to submit to the jury their requested special issues, with the result that we have concluded that the entire case was submitted by the court in the main charge. A number of the issues requested are on purely evidentiary matters, and the others are covered in issues submitted in the main charge.

Finding no reversible error, it is our opinion that the judgment of the lower court should be affirmed, and it is so ordered.

Affirmed.